UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                              CIVIL ACTION NO. 3:13-CR-00103-S

EMIGDIO VARGAS-MARTINEZ                                          DEFENDANT

**FINDINGS OF FACT**
**CONCLUSIONS OF LAW**
**AND RECOMMENDATION**

**INTRODUCTION**

Emigdio Vargas-Martinez is a federal prisoner who is currently serving a 46-month term

of imprisonment imposed in April of 2014, following his plea of guilty to one count of illegal

reentry into the United States by a previously deported alien in violation of 8 U.S.C. §1326(a)

and (b)(2).  Although his Rule 11(c)(1)(C) plea agreement precluded Vargas-Martinez from

taking a direct appeal from his conviction, or pursuing collateral relief by motion to vacate, he

took a direct appeal from his conviction.  The Sixth Circuit permitted his attorney to withdraw on

appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967) and held that Vargas-Martinez had

knowingly and voluntarily waived his right to appeal by his entry into the plea agreement.

Despite this waiver, the Sixth Circuit reviewed the record and found no merit to his challenge to

the validity of his guilty plea or the reasonableness of the sentence imposed pursuant to its terms.

The decision of the Sixth Circuit and his plea agreement notwithstanding, Vargas-

Martinez has now filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C.

§ 2255.[1]  In his motion, Vargas-Martinez argues that: (1) his appointed trial counsel rendered

ineffective assistance by his failure to reasonably investigate Vargas-Martinez's background and

present mitigating evidence at sentencing; (2) the District Court committed procedural error

---

[1] DN 52, Motion to Vacate.

when it failed to adequately consider all of the sentencing factors of 18 U.S.C. §3553(a); (3) the District Court further erred when it sentenced him without resolving disputed material facts contained in ¶¶ 31, 32, 34, 35 and 36 of the presentencing report; and (4) the sentence imposed by the District Court was clearly unreasonable where it relied on an unjustified 16-level enhancement pursuant to Sentencing Guidelines §2L1.2(b)(1)(A)(ii),  despite the fact that his former wife, Lynette Faye Vargas, in 2006 recanted her prior accusation that the Petitioner sexually assaulted her.

The United States has filed a response to the petition.[2]  The Government maintains that Vargas-Martinez is now procedurally barred from presenting grounds 2, 3 and 4 of his petition because he knowingly chose by his plea agreement to waive the opportunity to collaterally attack his sentence, and because all three of these grounds were either raised by Vargas-Martinez on appeal, where they were rejected on their merits, or were not raised on appeal and therefore are now barred from review on the merits absent a satisfactory showing of cause and prejudice.  The Government further argues that the remaining claim of ineffective assistance of trial counsel raised in ground 1 fails on its merits.

Martinez-Vargas has filed a reply (DN 63) in which he first insists that he is entitled to an evidentiary hearing on his claims of ineffective assistance of counsel.  He then reiterates his Sixth Amendment claim that his appointed counsel failed to properly investigate the true circumstances of his prior state conviction for the alleged sexual assault and abuse of his wife, Lynette Faye, which Martinez-Vargas insists was the result of is Lynette's false, and later recanted, accusations which were made in retaliation for his brief affair with her best friend, Carol Hatchless.  Vargas-Martinez also challenges the government's claim that three of the four

---

[2] DN 58, Response.

grounds raised in his current motion to vacate are barred by the waiver provisions of the Rule 11(c)(1)(C) plea agreement.

The Magistrate Judge, upon consideration of these arguments, agrees that grounds 2, 3 and 4 of the petition are procedurally barred based on Vargas-Martinez's deliberate waiver of the right to collaterally attack his sentence, and based on the fact that all of these grounds were either presented on appeal or were omitted on appeal and therefore are likewise barred.  Vargas-Martinez's remaining claim of ineffective assistance of counsel fails under the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 696 (1984) as the performance of his trial counsel was not  deficient, nor could Vargas-Martinez establish any prejudice even were such performance otherwise assumed to be deficient.  Accordingly, the Magistrate Judge shall recommend that the motion to vacate be dismissed with prejudice and that Martinez-Vargas be denied a certificate of appealability.

## FINDINGS OF FACT

A.  *Procedural History.*

On July 2, 2013, a criminal complaint was filed charging Vargas-Martinez, a citizen of Mexico, with illegal reentry into the United States following his removal in 2011, without the express permission of the Secretary of the Department of Homeland Security in violation of 8 U.S.C. §1526(a) and (b)(2).[3]  The affidavit of Immigration and Customs Enforcement (ICE) agent Robert Duckworth provided that on June 18, 2013, Duckworth encountered Martinez-Vargas at the Nelson County Jail in Bardstown, Kentucky.  Duckworth filed an ICE detainer with the jail after a records check confirmed that Martinez-Vargas was illegally present in the United States.

---

[3] DN 1, Complaint.

3

Duckworth's review of Vargas-Martinez's immigration file and criminal records revealed that he had been ordered deported to Mexico on Dec. 14, 2011, and had been removed from the United States the following week.  At the time of removal, Vargas-Martinez had a criminal record that included, among other offenses, a December 2006 felony conviction in the Nelson Circuit Court of Nelson County, Kentucky, on the felony charge of sexual abuse in the first degree, a conviction which resulted in a five-year prison sentence.  Further review of Vargas-Martinez's immigration file confirmed that he had not applied for permission from either the Attorney General of the United States or the Secretary of Homeland Security to reenter the United States following his removal.

Vargas-Martinez made an initial appearance before a federal magistrate judge on July 10, 2013, when he was ordered to be detained.  Following a detention hearing held five days later, Vargas-Martinez was remanded to the custody of the Marshal Service.[4]  Two days later a federal grand jury returned an indictment charging him with violation of 8 U.S.C. §1326(a) and (b)(2).[5]  The magistrate judge subsequently entered an order on Aug. 21, 2013[6] that Vargas-Martinez be detained pending trial.  Although a jury trial was set initially for Sept. 23, 2013,[7] trial was continued on several occasions based on notice from the Defendant that he would enter a change of plea to guilty based upon a plea agreement with the United States.[8]

On Jan. 17, 2014, Vargas-Martinez and the United States entered into a Rule 11(c)(1)(C) plea agreement.[9]  The plea agreement provided that, in return for Vargas-Martinez's plea of guilty to count 1 of the indictment, the total base offense level under the United States

---

[4] DN 6, Order on Initial Appearance.
[5] DN 10, Indictment.
[6] DN 21, Order of Detention.
[7] DN 23, Order.
[8] DN 24, Order continuing trial; DN 25, Order remanding further proceedings; DN 27, Order setting change of plea hearing.
[9] DN 29, Plea Agreement.

Sentencing Guidelines (USSG) would be established at level 19 with the parties agreeing that a sentence within the applicable guideline range, as calculated by the United State Probation Office, would be an appropriate disposition of Vargas-Martinez's case.[10]

The plea agreement further provided that Vargas-Martinez's criminal history would be determined by the U.S. Probation Office with both parties reserving their respective right to object to the calculation of the Defendant's criminal history pursuant to U.S.S.G. §4A1.1. The parties also agreed that Vargas-Martinez would be permitted to argue for a downward criminal history departure under the Sentencing Guidelines so long as he had no more than 18 criminal history points.[11] The plea agreement in paragraph 12 continued to state that Vargas-Martinez knowingly and voluntarily waived his right to direct appeal from his conviction and resulting sentence, as well as, the right to collaterally attack his conviction and sentence pursuant to 28 U.S.C. §2255 or any other collateral attack except a post-conviction attack based on a claim of ineffective assistance of counsel or prosecutorial misconduct.[12]

On the same date that Vargas-Martinez signed the plea agreement he appeared with counsel before the District Court to enter a plea of guilty.[13] During the change of plea hearing, which was conducted in English at the Defendant's request,[14] Vargas-Martinez denied any drug or alcohol use or mental health issues.[15] When asked if he was satisfied with the legal services of his appointed attorney, Assistant Federal Defender Donald Meier, Vargas-Martinez agreed that he was fully satisfied.[16] Vargas-Martinez then acknowledged each of the constitutional

---

[10] DN 29, Plea Agreement, pp. 3-4, ¶10.
[11] Id., pp. 4-5, ¶11.
[12] Id., p. 5, ¶12.
[13] DN 42, Tr. of change of plea hearing.
[14] A Spanish interpreter was available during the proceedings to assist.
[15] DN 42, pp. 5-6.
[16] Id. at pp. 6-7.

rights that would be waived upon acceptance of his guilty plea.[17]  He confirmed that he had reviewed the indictment with his attorney and that he understood the charge against him.[18]

The District Court explained the potential maximum penalties possible under the statute charged.[19]  Vargas-Martinez confirmed that he understood these penalties.[20]  He confirmed his status as a Mexican citizen along with his awareness of the possibility of deportation following the service of his sentence.[21]  The Government then set forth the material provisions of the plea agreement including the resolution of the case under the "fast track" program, which included a 2-point reduction from Vargas-Martinez's final offense level reducing it from 21 to a total offense level of 19.[22]  The Government explained the waiver provisions of the plea agreement by which Vargas-Martinez waived his right to appeal or to collaterally attack his conviction.[23]

The Government agreed with the District Court that the plea agreement provided for the calculation of a sentence within the guideline range applicable to a total offense level of 19 with the parties left to persuade the court concerning the appropriate criminal history category for the Defendant.[24]  Based on these provisions of the plea agreement, the District Court observed that the potential sentence for a total offense level of 19 would fall somewhere between 30 and 78 months of imprisonment with the Defendant reserving the right to argue for a potentially lower sentence.[25]

---

[17] Id. at pp. 7-9.
[18] Id. at p. 9.
[19] Id. at pp. 11-12.
[20] Id.
[21] Id. at p. 13.
[22] Id. at p. 14.
[23] Id.
[24] Id. at pp. 15-16.
[25] Id. at p. 18.

After this discussion between counsel and the District Court, Vargas-Martinez confirmed that he understood the fundamental provisions of the plea agreement.[26] He confirmed that he had discussed the plea agreement with his attorney and that he was familiar with the sentencing guidelines "grid" and its offense level and criminal history category structure.[27] Vargas-Martinez acknowledged that under the plea agreement that he was giving up his right to take a direct appeal from his conviction, as well as, his right to later attack it by way of a collateral attack so long as his sentence was in accordance with the terms of the agreement.[28] He denied that he had received any promises to induce him to enter a plea of guilty pursuant to the plea agreement, which unlike traditional Rule 11(c)(1)(C) agreements permitted Vargas-Martinez's counsel to argue at sentencing for a lesser sentence based on the determination of his criminal history category.[29]

When asked if he had any questions about the proceedings or the plea agreement, Vargas-Martinez indicated that he had no questions and that he understood everything that was "going on with this plea agreement."[30] The District Court then established the factual basis for Vargas-Martinez's plea.[31] Vargas-Martinez agreed with the charged facts set forth by the prosecutor-- that he illegally reentered the United States after being deported without the permission of the Dept. of Homeland Security.[32] The District Court then accepted Vargas-Martinez's plea of guilty and set a sentencing hearing for April 16, 2014.

---

[26] Id. at pp. 19-20.
[27] Id. at pp. 20-22.
[28] Id. at p. 23.
[29] Id. at pp. 24-25.
[30] Id. at p. 25.
[31] Id. at pp. 26-27.
[32] Id. at p. 27.

On April 16, 2014, the District Court conducted an extensive sentencing hearing.[33]  At the outset, the court confirmed Vargas-Martinez's command of the English language and the presence of a Spanish interpreter if needed.[34]  Defense counsel explained to the District Court the features of the plea agreement including the calculation of the total offense level of 19, which included a 16-level increase based on Vargas-Martinez's prior felony conviction for the first-degree sexual abuse of his former spouse.[35]  Counsel then proceeded to present argument concerning the calculation of his client's criminal history category.

Specifically, defense counsel advised the court that Vargas-Martinez objected to the criminal history set forth in paragraphs 30, 31, 32, and 33 of the final presentence report.[36]  The offenses set forth in these paragraphs, defense counsel explained, were all misdemeanors, two of which involved charges for insufficient funds and theft by deception that involved a total amount of money of only $65.[37]  Consequently, defense counsel maintained that a criminal history of VI overrepresented Vargas-Martinez's true criminal history.[38]

Defense counsel also challenged the adequacy of the state court documentation of Vargas-Martinez's prior misdemeanor convictions.[39]  In particular, counsel challenged the use by the state court of the prosecutor's plea agreements in lieu of a separate judgments of conviction for each of the charged misdemeanor offenses, along with the fact that, in at least one instance, the state court record did not confirm that Vargas-Martinez was appointed counsel prior to entry of his misdemeanor plea.[40]

---

[33] DN 43, Tr. of sentencing.
[34] Id. at p. 2.
[35] Id. at pp. 4-5.
[36] Id. at p. 8.
[37] Id. at pp. 8-9.
[38] Id. at p. 9.
[39] Id. at pp. 9-14.
[40] Id.

The United States noted in response to these arguments that the historic practice of the state trial court at the time that Vargas-Martinez entered his misdemeanor guilty pleas was to have the presiding judge sign off directly on the plea agreement, which was then treated as a final judgment of conviction.[41]   Following argument, the District Court sustained the objection of Vargas-Martinez's counsel to the misdemeanor convictions found in paragraphs 30 and 33 of the final presentence report that appeared from the state court records to be uncounseled.[42]   The District Court then continued to discuss the objections of defense counsel to paragraphs 34, 35 and 36 of the report.[43]   After extensive discussion of these paragraphs, the District Court overruled the remaining objections.[44]

Defense counsel then proffered for the District Court the position of Vargas-Martinez with respect to his prior state conviction for first degree sexual abuse.[45]   Following argument regarding the sexual abuse conviction, the District Court concluded that upon his release from state imprisonment, had Vargas-Martinez remained in the United States, he would have been subject to the state equivalent of supervision for five years.[46]   As a result of extensive argument, the District Court ultimately concluded that Vargas-Martinez had a criminal history category IV, which subjected him to a guideline sentencing range of 46-57 months of imprisonment rather than a potential maximum sentence of 70 months had a criminal history category VI been applied.[47]

---

[41] Id. at pp. 15-16.
[42] Id. at pp. 17-19.
[43] Id. at pp. 19-22.
[44] Id. at pp. 23-24.
[45] Id. at pp. 24-25.
[46] Id. at p. 29.
[47] Id. at pp. 38-39.

Vargas-Martinez then directly addressed the District Court.[48]  After offering an apology for his illegal reentry, Vargas-Martinez explained that his prior state felony conviction for first degree sexual abuse essentially was the result of being "framed by my ex-wife" who had filed charges against him because she "wanted to get sole custody of my two children…."[49]  Vargas-Martinez then turned to his successful efforts at self-improvement through education with a 2-year college degree, a GED certificate and various certifications in the construction trade industries all of which he earned while incarcerated.[50]

The District Court listened carefully to the testimony of Vargas-Martinez.  It acknowledged with approval Vargas-Martinez's efforts to educate himself and to develop trade skills, which the District Court observed would serve Vargas-Martinez well no matter where he ended up following his release.[51]  The District Court continued, in fact, to observe that Vargas-Martinez "unlike a lot of people that I have in this court" not only developed useful skills but also was obviously intelligent, as well.[52]  The District Court ultimately concluded that Vargas-Martinez had a total offense level, after a 2-level fast track deduction, of 19 with a criminal history category of IV, resulting in a sentencing range of 46-to-72 months with 2 years of supervised release.[53]  The District Court accordingly concluded that Vargas-Martinez would be sentenced at the low end of the applicable guideline range, or 46 months of imprisonment, to be followed by supervised release of two years.  In reaching this decision, the District Court advised the parties that it had "considered the Advisory Guidelines and the 3553(a) sentencing factors."[54]

---

[48] Id. at pp. 42-47.
[49] Id. at p. 43.
[50] Id.
[51] DN 43, Tr. at pp. 47-48.
[52] Id.
[53] Id. at p. 47.
[54] Id. at p. 46.

B.  *The Direct Appeal.*

On April 18, 2014, the District Court entered a judgment of conviction[55] that sentenced

Vargas-Martinez to the aforementioned 46-month term of imprisonment to be followed by two

years of supervised release.  Despite his plea agreement, Vargas-Martinez filed an appeal to the

Sixth Circuit with the assistance of counsel.[56]  On appeal, counsel filed a brief and moved to

withdraw pursuant to *Anders* while advising the court that review of the record had revealed no

meritorious grounds.  In so doing, counsel addressed potential issues with the validity of the plea

agreement provision that waived the right to appeal, the validity of Vargas-Martinez's guilty plea

and the reasonableness of his sentence.[57]  The Sixth Circuit notified Vargas-Martinez of his right

to directly respond to the *Anders* brief filed by his attorney on appeal.  Vargas-Martinez did not

file a response.

The Sixth Circuit in its order then directly considered the question of whether Vargas-

Martinez had knowingly and voluntarily waived his right to appeal by way of his Rule

11(c)(1)(C) plea agreement.[58]  The 3-member panel determined that Vargas-Martinez had

executed a valid plea agreement that contained an appeal waiver provision.  In this respect, the

order of the Sixth Circuit explained that

> Vargas-Martinez executed a written plea agreement containing an appeal-
> waiver provision.  Under that provision, Vargas-Martinez "knowingly and
> voluntarily waive[d] the right … to directly appeal his conviction and the
> resulting sentence…."  During the plea hearing, the Government
> summarized Vargas-Martinez's plea agreement, including the appeal-
> waiver provision.  The District Court reviewed the appeal-waiver
> provision with Vargas-Martinez, and he stated that he understood it.
> Vargas-Martinez also stated that he understood the plea agreement and all
> of its provisions.  Nothing in the record suggests that Vargas-Martinez's

---

[55] DN 38, Judgment of Conviction.
[56] DN 50, Order. *United States of America v. Emigdio Vargas-Martinez*, Appeal No. 14-5527 (6th Cir. Dec. 12, 2014).
[57] Id. at p. 2.
[58] Id. at pp. 2-3.

> assent to the plea agreement, and specifically to the appeal-waiver
> provision, was unknowing or involuntary.  Accordingly, the appeal-waiver
> provision in the plea agreement is enforceable, and Vargas-Martinez may
> not appeal his conviction and sentence.

Id. at p. 2.

Although the Sixth Circuit acknowledged that it did not need to consider the arguments raised on appeal regarding the validity of Vargas-Martinez's guilty plea and the reasonableness of his sentence, it nonetheless advised that the court had "thoroughly reviewed the record in this case and discovered no error warranting reversal of the district court's judgment."[59]  The Sixth Circuit panel therefore concluded that there were "no issues of arguable merit presented in Vargas-Martinez's appeal" and granted appellate counsel's motion to withdraw while affirming the judgment of the District Court.[60]  Vargas-Martinez did not seek further review by way of petition for a writ of certiorari to the U.S. Supreme Court.

### C. *The Collateral Attack.*

Vargas-Martinez instead filed the current motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §2255 the waiver language of his plea agreement at paragraph 12 notwithstanding.  Vargas-Martinez has raised four issues in his petition, as noted at the outset of this recommendation.

Ground 1 is his claim of ineffective assistance of counsel.  In this claim he maintains that his defense counsel failed to adequately investigate his background and to present mitigating facts at sentencing such as his educational achievements.  Ground 2 is Vargas-Martinez's claim that the trial court failed to adequately consider the sentencing factors of 18 U.S.C. §3553(a)

---

[59] Id. at pp. 2-3.
[60] Id. at p. 3.

when it imposed a 46-month term of imprisonment at the low end of the guideline range after having determined that Vargas-Martinez had a lower criminal history category of IV.

Ground 3 contains Vargas-Martinez's related claim that the District Court erred when it sentenced him based upon "disputed" and "convoluted" facts contained in the presentence investigation report without resolving the accuracy of the disputed facts.  Specifically, Vargas-Martinez refers to paragraphs 31, 32, 34, 35 and 36 of the presentence investigation report, which set out his prior criminal history.  Finally, he maintains in ground 4 of his motion to vacate that the District Court imposed a "clearly unreasonable" sentence due to the "unjustified 16-level enhancement [of his total offense score] pursuant to Sentencing Guideline §2L1.2(b)(1)(A)(ii)" based on his prior felony conviction for first degree sexual assault upon his estranged wife, given her subsequent recantation of her rape accusations.  Given the recantation, Vargas-Martinez insists that it was plain error for the District Court to impose the 16-level enhancement of his total offense score.

The United States as noted has filed a response in opposition to the motion to vacate that requests that it be dismissed with prejudice given Vargas-Martinez's waiver of grounds 2, 3 and 4 along with the meritless nature of his claim of ineffective assistance of trial counsel.  Vargas-Martinez has filed a reply which has been summarized above.  Accordingly, the matter is ripe for consideration.

Based on his independent review of the record, the cited authorities and arguments of the parties, the Magistrate Judge agrees with the United States that dismissal of the Petitioner's motion to vacate is required.  The Magistrate Judge shall further recommend that Vargas-Martinez be denied a certificate of appealability given his failure to establish that reasonable

jurists could debate the correctness of his procedural default on grounds 2, 3 and 4, or that he has

failed to state a persuasive Sixth Amendment claim of ineffective assistance of trial counsel.


## CONCLUSIONS OF LAW

A motion to vacate brought by a federal prisoner pursuant to 28 U.S.C. §2255 must set

forth one or more of three possible grounds for relief.  *See United States v. Doyle*, 631 F.3d 815,

817-18 (6th Cir. 2011).  The motion may allege an error of constitutional magnitude, allege that

the defendant's sentence fell outside the statutory limits, or maintain that a fundamental error of

fact or law occurred that rendered the entire criminal proceedings invalid.  Id.  (citing

*Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).  *See also, United States v.*

*Addonizio*, 442 U.S. 178, 185-86 (1979).

A §2255 petitioner will be procedurally barred from re-litigating a claim that he or she

previously raised or has attempted to raise on direct appeal.  *See Stephan v. United States*, 496

F.2d 527, 528-29 (6th Cir. 1974).  A §2255 motion is not a means for federal prisoners to obtain

a "second bite of the apple" on issues that were unsuccessfully raised on appeal or issues that

could have been raised.  *See Dupont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996) ("A

§2255 motion may not be used to re-litigate an issue that was raised on appeal absent highly

exceptional circumstances.").  Consequently, a §2255 petitioner who hopes to re-litigate a

previously considered issue must persuade the court that truly exceptional circumstances justify

re-examining an issue already resolved against him or her.  Id.

A §2255 petitioner also may not raise issues by way of a motion to vacate that should

have been raised on direct appeal, but were not.  A petitioner in such a situation has defaulted the

unraised issues unless he or she is able to show both cause for the omitted issue and actual

prejudice in the form of a reasonable probability of a different outcome on appeal had the issue been raised. *See United States v. Frady*, 456 U.S. 152, 164-65 (1982). The Sixth Circuit has adhered to this cause and prejudice test in §2255 cases. *Murr v. United States*, 200 F.3d 896, 900 (6th Cir. 2000) ("It is well-settled law that failure to raise an argument at trial or on direct appeal is waived on collateral review under §2255, absent the showing of both cause and actual prejudice.")(citing *Frady*, 456 U.S. at 164-65).

Application of the above principles immediately reveals that Vargas-Martinez cannot successfully obtain review of the merits of grounds 2, 3 and 4 of his petition. He has had a direct appeal, the language of his plea agreement notwithstanding. The opinion rendered on appeal by the Sixth Circuit panel expressly determined, first, that Vargas-Martinez knowingly and voluntarily waived his right to appeal, and second, and just as importantly, that review of the record confirmed that none of the issues he previously raised concerning the reasonableness of his 46 month sentence, or the validity of his guilty plea, had any merit. Thus, Vargas-Martinez cannot have a "second bite of the apple" as to those issues that he directly raised on direct appeal concerning his sentence. *Dupont*, 76 F.3d at 110.

He likewise cannot now obtain review of any sentencing or other issues that he did not raise on direct appeal. He has not shown any extraordinary circumstances, nor any cause or prejudice, that would permit this Court to revisit previously raised issues or to examine new ones that he failed to raise. Accordingly, these reasons alone would preclude the Court from now considering the substance of his arguments in grounds 2, 3 and 4.

There remains yet another equally important reason why we cannot address any of these three grounds. In his plea agreement at paragraph 12, Vargas-Martinez specifically waived his right to collaterally attack the judgment of conviction and sentence except for issues of

15

ineffective assistance of trial counsel or prosecutorial misconduct.  The Sixth Circuit on direct appeal has determined that Vargas-Martinez knowingly and intelligently entered into the plea agreement.  The validity of the plea agreement is now beyond dispute.  He is bound by what he promised to do, just as the Government was bound by what it promised to do - - and did with respect to his sentencing proceedings.

The Government correctly states in its response that the plea agreement is a binding contract that applies with equal force to both parties, who are required to honor its terms.  *United States v. Robison*, 924 F.2d 612, 613 (6th Cir. 1993); *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986).  This contract appropriately may include the knowing waiver of a constitutional right or any other statutory or common law right, such as the right to collaterally attack a judgment pursuant to 28 U.S.C. §2255.  *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 487-89 (6th Cir. 1999).  Because Vargas-Martinez as part of his plea agreement promised he would not collaterally attack the judgment of conviction or sentence except on grounds of ineffective assistance of counsel or prosecutorial misconduct, he is now bound to honor his promise, or failing that, the Court will enforce it against him. Grounds 2, 3 and 4 may not now be raised by way of §2255 motion.  We will not undo a valid plea agreement by considering the merits of those arguments.  While the Government has addressed such merits in various respects, the Court need not and will not do so.  We therefore focus on the remaining ground, his claim of ineffective assistance of trial counsel in ground one of his § 2255 motion.

*Ineffective Assistance of Counsel.*

The Sixth Amendment guarantees that in all criminal prosecutions the accused shall enjoy the right to assistance of counsel for his defense. U.S. Const. Amend VI.  In *McMann v. Richardson*, 397 U.S. 759, 771 (1970), the Supreme Court set out the derivative principle that all "defendants facing felony charges are entitled to the effective assistance of competent counsel." *See McElrath v. Simpson*, 595 F.3d 624, 630 (6th Cir. 2010).  Subsequently, in *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the Supreme Court established the often-cited, two-part, benchmark test for evaluating a claim of ineffective assistance of counsel.  *Id*.

First, the defendant, or petitioner in this case, must show that the performance of his or her attorney was deficient, or objectively unreasonable, in light of the then prevailing professional norms.  *Hodges,* 727 F.3d at 545 ("The Supreme Court has explicitly approved using ABA Guidelines on attorney performance in effect at the time of a defendant's trial as "guides to determining what is reasonable" performance by counsel.")(citing *Padilla v. Kentucky*, 559 U.S. 356 (2010)).  Put differently, an attorney's performance will be deficient if "counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  *See Howard v. United States,* 743 F.3d 459, 464 (6thCir. 2014)(discussing *Strickland*).

The second part of the two-part test of *Strickland* requires that the defendant establish that the deficient performance of his or her attorney prejudiced the defense.  *Id*.  When a claim of ineffective assistance is raised in the context of trial, this second part of the *Strickland* test requires the Petitioner to show that "a reasonable probability existed that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  *See also, Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require

17

the State to 'rule out' "a more favorable outcome to prevail. "Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different"), *reh'g denied*, 130 S.Ct. 1122, 175 L.Ed.2d 931 (Jan. 11, 2010).

A reasonable probability in that context is defined by *Strickland* to be a probability sufficient to undermine the confidence of the court in the outcome of the proceedings. *Id.* In the words of *Strickland*, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) ("To prevail on an ineffective-assistance claim under the Sixth Amendment, a plaintiff must show that his counsel's performance was constitutionally deficient and that it prejudiced him 'render[ing] the trial unfair and the result unreliable.'") (citing *Hall v. Vasvinder*, 563 F.3d 222, 237 (6th Cir. 2009)).

Courts are directed by *Strickland* to be highly deferential in their scrutiny of the performance of counsel. *Strickland*, 466 U.S. at 689. In fact, *Strickland* cautions directly that "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690; *Stumpf v. Robinson*, 722 F.3d 739, 753 (6th Cir. 2013), *cert denied,* 134 S.Ct. 905 (2014)(discussing deference under *Strickland*). Review of an attorney's performance, therefore, should not be made from the perspective of hindsight, but instead should evaluate the objective reasonableness of the challenged attorney's performance in the circumstances as they existed at the time of the alleged error. *Hanna v. Ishee,* 694 F.3d 596, 612 (6th Cir. 2012)("Counsel's performance must be assessed according to the time of representation, rather than viewed with the benefit of hindsight.") *cert denied* 124 S.Ct. 101 (2013)(citing *Strickland*).

The tactical decisions of a defendant's trial counsel are presumed to be part of sound trial strategy and therefore will not be subject to successful attack absent a defendant overcoming such presumption. *Varden v. Wainwright*, 477 U.S. 168, 185-87 (1986); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 2006)( [T]he standard to which an attorney is held is not that of the most astute counsel, but rather that of "reasonably effective assistance.")(citing *Strickland*).

Vargas-Martinez's claim of ineffective assistance of trial counsel in ground 1 of his petition rests solely on the argument that his trial attorney, a highly experienced public defender, failed to present mitigating background information at the sentencing hearing held on April 16, 2014. In this regard, Vargas-Martinez argues that his trial attorney should have discussed the many educational diplomas and certificates of achievement that Vargas-Martinez earned while incarcerated, which include a GED, a 2-year college associate's degree, and a number of construction industry certifications.

The immediate problem with this argument is that the District Court was well aware of all of Vargas-Martinez's educational accomplishments. Indeed, it was Vargas-Martinez who in his extended statement to the Court prior to sentencing provided it with the very information that he maintains that his trial counsel failed to raise. The Government correctly quotes from the transcript of the sentencing hearing where Vargas-Martinez explained that he earned his high school diploma, obtained certification in two different fields of construction technology, as well as earned his associate's college degree.

Further, as the Government correctly point out, this same information was included in his presentence investigation report.[61] Indeed, the District Court favorably acknowledged Vargas-Martinez's educational accomplishments while incarcerated.[62] Accordingly, it is difficult to see

---

[61] DN 40, PSR at p. 11.
[62] DN 43, Tr. at pp. 47-48.

how Vargas-Martinez could establish any prejudice, even were the Court to assume that his trial

counsel was somehow deficient in failing to introduce into evidence the various certificates and

diplomas of which he personally informed the Court prior to being sentenced.

In the absence of any prejudice under *Strickland*, Vargas-Martinez has failed to establish

a viable Sixth Amendment claim of ineffective assistance of counsel.  Indeed, his arguments in

ground 4 are so unpersuasive that reasonable jurists could not disagree that he has failed to raise

a Sixth Amendment claim on which he could obtain relief.  Because the face of the record

entirely refutes his arguments in this regard, no grounds for an evidentiary hearing now exist.

*United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978).


*Certificate of Appealability.*

The final question is whether Vargas-Martinez is entitled to a certificate of appealability

(COA) pursuant to 28 U.S.C. § 2253(c).  A state or federal prisoner who seeks to take an appeal

from the dismissal of a habeas corpus petition or a motion to vacate must satisfy the COA

requirements of 28 U.S.C. § 2253(c).  A COA will be issued only if the applicant has made a

substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).

Such a substantial showing is made when a prisoner establishes that jurists of reason

would find it debatable whether the petition or motion states a valid claim of the denial of a

constitutional right or, in the cases in which the petition is resolved based upon a procedural

ruling, that jurists could find it debatable whether the district court was correct in its procedural

ruling.  *See Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).  The Court is required to

make an individual assessment of the issues and to indicate which specific issue or issues satisfy

the standard of § 2253(c).  *See Stanford v. Parker*, 266 F.3d 442, 450-51 (6th Cir. 2001), *cert.*

*denied*, 537 U.S. 831 (2002).  *See also Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (discussing 28 U.S.C. § 2253(c)).  A state prisoner may raise on appeal only those specific issues for which the district court grants a certificate of appealability.  *Powell v. Collins*, 332 F.3d 376, 398 (6th Cir. 2003).

Vargas-Martinez has not shown that jurists could reasonably debate whether his petition states a valid Sixth Amendment claim.  The record overwhelming reveals that his appointed trial counsel, an experienced federal defender, diligently raised all possible issues related to the calculation of his sentence and favorably influenced the District Court to calculate his criminal history category at level IV thereby resulting in a reduced sentence.  The District Court moreover was fully aware of Vargas-Martinez education history and approvingly commented on it prior to sentencing him.  The remaining issues raised in the motion are procedurally barred not only by the express language of the plea agreement but also by the fact of Vargas-Martinez prior appeal.  Consequently, he is not entitled to a certificate of appealability.

**RECOMMENDATION**

The Magistrate Judge having made findings of fact and conclusions of law recommends that the motion to vacate be **DENIED** as to all counts and that Vargas-Martinez be denied a certificate of appealability.

## **<u>NOTICE</u>**

Within fourteen (14) days after being served a copy of these proposed Findings and Recommendation, any party who wishes to object must file and serve written objections or further appeal is waived.  *Thomas v. Arn,* 474 U.S. 140, 150-51 (1985); 28 U.S.C. § 636(b)(1)(c); Fed. R. Crim. P. 59(b)(2); Fed. R. Civ. P. 72(b)

Copies to Counsel of Record